ROBERT J. ROSATI, No. 112006
robert@erisalg.com
RAQUEL M. BUSANI, No. 323162
raquel@erisalg.com
6485 N. Palm Ave., Ste. 105
Fresno, California 93704
Telephone: 559-478-4119
Facsimile: 559-478-5939

Attorneys for Plaintiff,
ROBERTA SILVA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ROBERTA SILVA,<br><br>           Plaintiff,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN,<br><br>           Defendants. | CASE NO.:<br><br>**COMPLAINT** |

Plaintiff, ROBERTA SILVA ("Plaintiff" or "Silva") alleges as follows:

## JURISDICTION

1. Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA" 29 U.S.C. section 1132(a)(1). Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America. 29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2. Venue is proper in the Northern District of California because Plaintiff was and is a resident of the City of Hayward, in the County of Alameda, California, when Defendant terminated her long-term disability benefits and denied her appeal of that decision. Therefore,

29 U.S.C. section 1132(e)(2) provides for venue in this Court. Intradistrict venue is proper in this Court's San Francisco/Oakland Division.

**PARTIES**

3. Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Defendant Federal Express Corporation Long Term Disability Plan ("FedEx LTD Plan"), and thereby entitled to receive benefits therefrom. Plaintiff is a participant because she was an employee of FedEx Trade Networks Transport & Brokerage, Inc.

4. Defendant The FedEx LTD Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq. The FedEx LTD Plan is self-funded by the Federal Express and other sponsoring employers, including Silva's employer.

**CLAIM FOR RELIEF**

5. Federal Express Corporation entered into an agreement with Aetna Life Insurance Company ("Aetna") to act as claim and appeals administrator as to benefits determinations for The FedEx LTD Plan and Aetna is designated as its "Claims Paying Administrator" in the FedEx LTD Plan document, as amended and restated effective January 1, 2017. As relevant here, Aetna was delegated authority to exercise discretion on behalf of The FedEx LTD Plan, to administers LTD claims and to decide LTD appeals, while The FedEx LTD Plan remained ultimately responsible for funding LTD benefits.

    A. Plaintiff is informed and believes, based on Aetna's June 26, 2018, letter to the Securities and Exchange Commission regarding File No. 001-16095, and thereon alleges, that prior to Silva's claim Aetna completed the sale of its domestic group life insurance, group disability insurance and absence management businesses to Hartford Life and Accident Insurance Company ("Hartford") and, pursuant to that sale transferred to Hartford, effective January 1, 2018, "all employees supporting the divested businesses."

    B. In the Plan document, as amended and restated effective April 1, 2020,

which otherwise does not apply to Silva's claim, it is noted that the "Claims Paying Administrator," effective April 1, 2020, "shall mean Hartford Life and Accident Insurance Company ("Hartford"). Silva, therefore, is informed and believes that "Claims Paying Administrator" duties were delegated to Hartford effective April 1, 2020.

6. The FedEx LTD Plan document provides long disability benefits after 26 weeks elimination period.

7. The FedEx LTD Plan document includes the following terms:

A. **Claims Paying Administrator** is defined in Section 1.1(e) of The 2020 FedEx LTD Plan, which does not apply to Silva's claim, as: "Shall mean Aetna Life Insurance Company or any other entity or person designated as such by the Company." *Also see* Paragraph 7.B.

B. **Disability or Disabled** is defined in Section 1.1(l) of the FedEx Plan document as:

> "Disability or Disabled shall mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms. In the absence of significant objective findings, conflicts with managers, shifts and/or workplace setting will not be factors supporting disability under the Plan."

C. **Occupational Disability** is defined in Section 1.1(w) of The Plan document as:

> "Occupational Disability shall mean the inability of a Covered Employee, because of a medically- determinable physical or functional impairment or a medically determinable Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his Regular Occupation. An Occupational Disability commences on the date the Covered Employee is unable to perform the duties of his Regular Occupation. Occupational Disability shall include a natural physical deterioration which impairs a Covered Employee's ability in connection with his duties in the operation or maintenance of an aircraft, vehicle or any other such equipment requiring licensing for its operation or maintenance and which results in the revocation of such license and denial of restoration thereof."

      D.      **Regular Occupation** is <u>not</u> defined in the 2017 LTD Plan.

      E.      **Total Disability** is defined in Section 1.1(jj) of the FedEx LTD Plan document as:

> "<u>Total Disability</u> shall mean the complete inability of a Covered Employee, because of a medically determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week."

      E.      **Proof of Disability** is defined in Section 5.1 of the FedEx LTD Plan document as:

> "<u>Proof of Disability</u>.  No Disability Benefits shall be paid under the Plan unless and until the Claims Paying Administrator has received the Covered Employee's application for benefits and information sufficient for the Claims Paying Administrator to determine pursuant to the terms of the Plan that a Disability exists.  Such determination shall be made in a fair and consistent manner for all participants in the Plan, and in a manner designed to ensure the independence and impartiality of the persons involved in making the decision.  Such information may, as the Claims Paying Administrator shall determine, consist of a certification from the Employee's attending Practitioner in the form prescribed by the Claims Paying Administrator, information in the form of medical narrative reports, pathology reports, x-rays and any other medical records or other information as may be required by the Claims Paying Administrator. In addition, a Covered Employee may be required, as the Claims Paying Administrator shall determine, to submit continuing proof of Disability in the form of the information described above, as well as evidence that he continues to be under the care and treatment of a Practitioner during the entire period of Disability. If, in the opinion of the Claims Paying Administrator, the Practitioner selected by the Covered Employee cannot substantiate the Disability for which a claim is being made or benefits are being paid hereunder, such Employee may be required to submit himself to an examination by a Practitioner selected by the Claims Paying Administrator. The burden of proof for establishing a disability is on the Covered Employee."

      F.      Section 5.3(c) of the FedEx LTD Plan document states, in part:  "<u>Decision on Review</u>.  The Claims Paying Administrator shall conduct reviews of denial of benefits and provide the claimant with notice of the decision reached by the Claims Paying Administrator."

      G.      Section 5.3(d) of the FedEx LTD Plan document grants authority to construe and interpret The FedEx LTD Plan, determine eligibility, and decide all questions of eligibility for benefits under The Plan document to the "Administrator."  The

1  "Administrator" is Federal Express Corporation pursuant to Sections 1.1(c) and (3) of The FedEx LTD Plan document.

   H.   Section 4.3(d) of the FedEx LTD Plan document empowers the Claims Paying Administrator to interpret The FedEx LTD Plan's provisions with respect to matters relating to eligibility of a claimant for benefits under The FedEx LTD Plan, which states, "The Claims Paying Administrator, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. The determination of the Claims Paying Administrator shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the individual's or committee's decision was arbitrary and capricious."

8.  Silva:

   A.   Is, at all relevant times was, a "Covered Employee" as the term is defined by the FedEx LTD Plan document; and

   B.   Is, and at all relevant times was, under the direct care and treatment of one or more "Practitioners," as that term is defined by The Plan document; and

   C.   Timely submitted to Hartford her application for LTD benefits.

9.  Silva was employed by FedEx Trade Networks as an ECO Manager at the time she became disabled. In her role as an ECO Manager, Silva's duties included:

> To plan, organize and control the input, movement, processes/sort, and output of the operations to ensure a high level of service. Provides leadership and direction promoting the people-service-profit philosophy as well as encouraging the growth and development of team members. Manages all other necessary activities, which provide optimum service to customers.
>
> Responsible for selecting, training, motivating, and developing a staff consisting of direct and indirect reports. Responsible for a revenue and payroll budget according to divisional needs. Implements effective business tactics and strategies to ensure the operations produce quality services to

customers. Ensures cost effectiveness of operations through established control of equipment, utilities, supplies, overtime hours, and a timely quality output to avoid monetary penalties and/or customer dissatisfaction. Maintains contact with customers (internal and external) with regard to conditions affecting the service level of area served. Provides support for and participates in the design, development, implementation, and follow-up of projects related to customer service (internal and external) and support. Establishes team as well as individual goals on quality and productivity. Controls movement and activities to instill a service-conscious attitude, and minimize service failures. Ensures corporate security policy as well as safety methods and programs are implemented, maintained and adhered to. Conducts meetings to provide employees with information regarding division/operation; applies consistent administration of disciplinary procedures. Maintains accurately all required reports, paperwork, payroll, vacation schedules, performance reviews and personnel record statistics through established company policy guidelines. Enforces company policies and procedures to ensure compliance with customs and related laws and regulations. Identifies training requirements and trains, coaches, and counsels team members.

This position requires strong basic management, human relations and communication (written and verbal) skills. General knowledge of safety awareness within an operational division. 4-Year degree preferred/ equivalent in business and minimum of five (5) years experience in the field/ industry. Minimum of 1 year in a leadership role. Individual customs broker's license is preferred.

10. Silva last worked on February 19, 2019, at which time she ceased working due to disability and thereafter applied for Short Term Disability benefits from the FedEx STD Plan.

SILVA'S STD CLAIM

11. On May 13, 2019, Aetna approved STD benefits for Silva, with a "Benefit Begin Date" of March 1, 2019, finding that objective/clinical findings supported ongoing disability. Silva was thereby granted STD benefits effective March 1, 2019, and paid STD benefits through June 16, 2019.

12. By letter dated June 25, 2019, Aetna, on behalf of The STD Plan, terminated Silva's STD benefits.

13. By facsimile dated July 9, 2019, Silva appealed the termination of her STD disability benefits.

14. By letter dated December 17, 2019, Hartford denied Silva's appeal of the termination of her STD benefits.

15. Silva thereafter filed suit. The FedEx STD Plan thereafter reinstated and paid the balance of Silva's STD benefits in July 2020.

16. Once Silva had been paid the balance of the STD benefits for which she was eligible, she then met all the requirements for her to apply for LTD benefits from the FedEx LTD Plan.

SILVA'S OCCUPATIONAL DISABILITY LTD CLAIM

17. By letter dated July 8, 2020, Hartford wrote Silva, in part, "we recommend that you now begin the process for filing for long term disability (LTD) benefits. You must complete and return your LTD forms.

18. Pursuant to the July 8, 2020, letter, Silva timely completed and returned to Hartford the required forms to apply for LTD benefits from the FedEx LTD Plan.

19. By letter dated August 10, 2020, Hartford notified Silva that, "Your claim for disability benefits beginning 8/30/2019 has been reviewed. Based on our review, your claim has been denied." The letter further stated, "Our review determined that we have not received sufficient information providing evidence of impairment that would preclude you from performing the duties of your own sedentary physical-demand-occupation. . . Therefore, no benefits will be authorized for this claim." The letter further stated, "Specifically, the medical information does not show significant objective findings, nor have we received medical information to determine, pursuant to the terms of the Plan, that a Disability exists." The letter invited Silva to submit an appeal within 180 days.

20. By letter dated January 27, 2021, Silva timely submitted her appeal from the denial of her LTD benefits.

21. By letter dated February 17, 2021, Hartford acknowledged receipt of the appeal and also explained that the applicable plan for Silva was the 2017 Plan because "Ms. Silva's date of disability was in 2019 and proceeds the amended April 1, 2020 Plan. Hartford also sent the correct, 2017 Plan Document to Silva.

22. By letter dated April 6, 2021, Hartford notified Silva that "We've completed our review of the appeal… We've overturned the original decision to deny [the] claim."

23. By letter dated April 8, 2021, Hartford informed Silva that, "We reviewed your Long Term Disability (LTD) claim and approved your benefits starting 8/21/2019. [sic] Benefits

continue as long as you meet the definition of disability and other terms of the policy." That letter erroneously quoted the definition of disability from the April 1, 2020 Plan Document.

24. After Hartford approved Silva's benefits from December 13, 2019, through August 29, 2021, Hartford began its investigation of Silva's claim for "total disability" benefits.

25. By letter dated April 29, 2021, Hartford notified Silva, through counsel, that "Your claim for disability benefits beginning 08/30/2019 has been reviewed. It has been determined that no benefits are payable to you for this claim beyond 12/22/2019. I have confirmed that you are retired from Federal Express effective 12/23/2019 as you are no longer considered a permanent full-time employee, your Long Term Benefits are not payable beyond 12/22/2019." The letter quoted Section 2.2(b) and a portion of Section 3.3(b)(6) of the Plan document and invited Silva to appeal again.

26. By letter dated October 12, 2021, Silva appealed the termination of her LTD benefits.

27. By letter dated January 6, 2022, Hartford denied Silva's appeal of the April 29, 2021, denial of her LTD benefits.

28. By notice dated January 27, 2022, the Social Security Administration informed Silva that it found her disabled under its rules as of February 20, 2019, and awarded her benefits under its rules.

29. Silva thereafter filed suit again. As a result of that suit, Silva's "Occupational Disability" LTD benefits were paid and Silva was allowed to apply for "Total Disability" LTD benefits from The Plan.

30. Silva timely applied for "Total Disability"" LTD benefits from The Plan for the period beginning August 30, 2021, until her eligibility for such benefits ended.

31. By letter dated October 12, 2023, Hartford notified Silva that "it has been determined that no benefits are payable to you for this claim beyond 8/29/2021."

32. By letter dated April 1, 2024, through her counsel, Silva appealed the adverse benefits determination set forth in Hartford's October 12, 2023, letter.

33. By letter/fax dated June 4, 2024, Hartford informed Silva that it needed an

extension of time in which to review Silva's claim before making a decision.

34. In the course of investigating Silva's appeal, Hartford obtained a "Peer Review" report dated June 10, 2024, by Dr. Ross Doize.

35. By letter dated June 11, 2024, Hartford transmitted Dr. Doize's peer review report to Silva's counsel and invited Silva's counsel to comment on it.

36. By letter dated June 21, 2024, Silva, though counsel, timely commented on Dr. Doize's June 10, 2024, report.

37. By letter dated June 24, 2024, Hartford informed Silva that it completed its review and her appeal and agreed with its original decision to deny benefits as of August 29, 2021.

38. Silva suffers from and is disabled the following conditions: coronary atherosclerotic disease, iron deficiency anemia, osteoarthritis of the hips and back, bilateral carotid artery stenosis, migraines, chronic thoracic pain, hypertension, hypothyroidism, pre-diabetes, irritable bowel disease, small unruptured cerebral aneurysm, atherosclerosis of the aorta.

39. Silva's medical records substantiate physical and anatomical physiological or psychological abnormalities which can be observed independent of Silva's symptoms for the conditions listed in Paragraph number 38. Therefore, there are significant objective findings of these conditions.

40. Silva is, at all relevant times, has been, under the direct care and treatment of appropriate practitioners for her various disabling medical conditions.

41. Plaintiff has exhausted all administrative remedies required to be exhausted by the terms of The FedEx LTD Plan and by ERISA.

42. At all times mentioned herein Plaintiff was, and continues to be, totally disabled under The Plan's definition of "total disability" and therefore entitled to total disability benefits under the terms of The FedEx LTD Plan for the period from August 30, 2021, when those benefits ceased, through her age of 65.

43. ERISA section 503, 29 U.S.C. section 1133 provides:

>AIn accordance with regulations of the Secretary, every employee benefit plan shallB
>
>(1)　provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and
>
>(2)　afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

44.　Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C. '1133 and its implementing Regulations. Specifically:

　　A.　29 U.S.C. '1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendants herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

　　B.　The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. '1133. These Regulations are set forth in 29 C.F.R. '2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

　　　　i.　Such procedures comply with the specifications of the Regulations.

　　　　ii.　The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

　　　　iii.　Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons

for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

   iv. The plan is required to provide a full and fair review of any adverse determination which includes:

    a. That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

    b. A document, record, or other information shall be considered "relevant: to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon

in making the benefit determination.

   c. The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

   d. The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

   e. The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

   f. The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

45. Hartford did not comply with ERISA's regulations.  29 C.F.R. § 2560.503-1(h)(2)(iv) requires the review "provide for review that takes into account all comments documents, records, and other information submitted by the claimant relating to the claim. . . ."

46. Defendant denied Plaintiff a full and fair review of her claim for benefits as follows:

   A. Hartford did not consider all comments and documents submitted in support of Plaintiff's appeal from the termination of her LTD benefits.  Specifically, her

arguments set forth in Paragraph 34, that even as a non-employee, she is entitled to 24 months of LTD benefits through August 29, 2021.

   B. Hartford otherwise violated the Regulations.

47. An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Plan.

48. Plaintiff contends, and the FedEx LTD Plan disputes, that Plaintiff is entitled to LTD benefits under the terms of the Plan document for the period from August 30, 2021, through the maximum benefit period under the Plan Document, when Silva attained the age of 65 years, in October, 2023, because Plaintiff contends, and Defendant The FedEx LTD Plan disputes, that Plaintiff, under the plain terms of the Plan document, the termination of Plaintiff's LTD benefits was an abuse of discretion and a violation of the Plan Document's terms.

49. Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant FedEx LTD Plan is obligated to pay total disability benefits to her, retroactive to the first day her benefits were terminated August 30, 2021, through October, 2023.

50. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

51. As a proximate result of Defendant, The FedEx LTD Plan's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The FedEx LTD Plan.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1. For declaratory judgment against Defendant, the FedEx LTD Plan, requiring Defendant The FedEx LTD Plan Document in October 2023 to pay Silva "total disability" benefits under the terms of the FedEx LTD Plan for the period from August 30, 2021, through

and including the date Silva turned 65, which benefits total $50,818.24, or according to proof.

      2.      For interest on unpaid benefits.

      3.      For attorney's fees pursuant to statute against Defendant.

      4.      For costs of suit incurred against Defendant.

      5.      For such other and further relief as the Court deems just and proper.

Date: July 3, 2024.

                                         /s/ Robert J. Rosati
                                        Robert J. Rosati, Esq.

                                          *Attorney for Plaintiff, ROBERTA SILVA*